## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ASHTON BELL & DELILAH BELL )<br>216 13th Street )<br>West Point, VA 23181 )<br> )<br>and )<br> )<br>LUCY R. EDWARDS )<br>222 12th Street )<br>West Point, VA 23181 )<br> )<br>       *Plaintiffs*, )<br> )<br>v. )<br> )<br>WESTROCK CP, LLC, )<br>504 Thrasher Street )<br>Norcross, GA 30071 )<br> )<br>    <u>SERVE REGISTERED AGENT</u> )<br>    Corporation Service Company )<br>    Bank of America Ctr. 16th Floor )<br>    1111 East Main Street )<br>    Richmond, VA 23219 )<br> )<br>WEST POINT CHIPS, INC. )<br>218 Midway Route )<br>Monticello, AR 71655 )<br> )<br>    <u>SERVE REGISTERED AGENT</u> )<br>    CT Corporation System )<br>    4701 Cox Road, Suite 285 )<br>    Glen Allen, VA 23060 )<br> )<br> )<br>       *Defendants*. )<br>_____ ) | Case No.:  3:17cv829<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

COMES NOW, the Plaintiffs Ashton Bell, Delilah Bell and Lucy R. Edwards (hereinafter "Plaintiffs"), and hereby set forth their claims against Defendants, WestRock CP, LLC ("WestRock") and West Point Chips ("WPC") (WestRock and WPC are collectively referred hereinafter as "Defendants"), stating as follows:

## NATURE OF THE CASE

1. WestRock operates a paper mill (the "West Point mill") in West Point, Virginia, at which it maintains massive piles of wood chips. On property adjacent to the West Point mill, WPC operates a wood chipper that processes logs into wood chips for WestRock. The wood chips are used to manufacture containerboard.

2. From time to time, a great amount of dust is blown from the wood and wood chip piles into the air and then onto other properties in West Point, creating a nuisance and trespassing onto property owned and occupied by the Plaintiffs' and members of the Class. The fugitive dust is intermittent and unpredictable in where and when it is blown, and it depends upon various factors, such as weather conditions, the height and configuration of the wood and wood chip piles, the way the piles are maintained, and the manner in which the logs are processed.

3. The fugitive wood dust migrates from wood chip piles located at the West Point mill and the wood piles located at WPC and settles on the Plaintiffs' and Class members' properties and collects in and on their vehicles, and in and on their homes.

4. Accordingly, Plaintiffs, individually and on behalf of a Class of all persons similarly situated, bring claims for nuisance and trespass caused by the fugitive wood dust and seek money damages for, but not limited to, loss of use and enjoyment of their properties.

Plaintiffs, individually and on behalf of a Class of all persons similarly situated, also seek an injunction prohibiting any future migration of dust from the wood piles or the wood chip piles onto their properties.

### PARTIES

5. Plaintiffs Ashton Bell and Delilah Bell ("the Bells") are residents of West Point, Virginia. Their home is located at 216 13th Street, West Point, VA 23181. The Bells began residing in the home in 1979 and purchased it in 1992.

6. Plaintiff Lucy R. Edwards is a resident of West Point, Virginia. Her home is located at 222 12th Street, West Point, VA 23181. She purchased her home in 2007.

7. Defendant WestRock is a Delaware corporation, with its principal place of business at 504 Thrasher Street, Norcross, GA 30071. WestRock operates the paper mill located at 19th and Main Street, West Point, Virginia 23181, and owns the property located at 200 14th Street in West Point on which the wood and wood chip piles are maintained.

8. Defendant West Point Chip is an Arkansas corporation, with its principal place of business at 218 Midway Route, Monticello, AR 71655. WPC operates the wood chipper and maintains the wood piles on property owned by WestRock.

### JURISIDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (Plaintiffs are citizens of Virginia and Defendants are domiciled and incorporated in another state), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiffs' class.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District and a substantial part of the events or omissions giving rise to Plaintiffs'

claim occurred in this Judicial District. In addition, WestRock and WPC do business and/or transact business in this Judicial District, and therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## **FACTS COMMON TO ALL COUNTS**

11. WestRock owns and operates a paper mill in West Point, King William County, Virginia.

12. In connection with its operation of the mill, WestRock stores and maintains on its property massive piles of wood chips.

13. The wood chips are manufactured by a chipping company, West Point Chip, which processes hundreds of logs a day for this purpose. West Point Chip operates it chipper on property adjacent to the paper mill, also in West Point, King William County, Virginia.

14. The wood chip and wood piles are located within 100 feet of residential property owned by Plaintiffs Ashton and Delilah Bell and Lucy Edwards:



4

15. The wood chip piles and wood piles are located within one mile of all the properties owned by members of the Class.

16. From time-to-time large amounts of dust are blown from the wood and wood chip piles and onto Plaintiffs' properties and properties owned by members of the Class.

17. For instance, fugitive dust originating from the wood piles and wood chip piles settles and accumulates on and within the Bells' garage, porch, and home.

18. It is useless for the Bells to clean the dust off their porch or out of their garage because it simply returns.

19. Plaintiffs and members of the Class cannot leave the windows in their homes up because the dust gets into their homes. The dust enters Plaintiffs' and the Class members' homes even when the windows are closed.

20. From time to time, Ms. Edwards has noticed clouds of dust coming from the West Point Mill.

21. Plaintiffs and members of the Class cannot leave the windows on their vehicles rolled down because the dust gets into the vehicles. Dust enters Plaintiffs and Class members' vehicles even when the windows are closed.

22. Plaintiffs and members of the Class from time to time experience dust deposits on their window sills, porches and in their vehicles.

23. The dust gets on clothing, requiring laundering and dry-cleaning.

24. Plaintiffs and members of the Class have from time to time complained to WestRock about the fugitive dust, but they continue to suffer from dust blowing from Defendants onto their properties.

25. WestRock and WPC's actions have been committed knowingly so as to demonstrate a willful and wanton disregard for the rights of the Plaintiffs and the members of the Class in the use and enjoyment of their homes and property.

26. All conditions precedent to bring this action have occurred or been waived.

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to a class defined as: All persons who own or reside on property in West Point located one mile or less from 200 14th Street in West Point, Virginia.

28.     The following map shows the location of the properties within the Class:



29.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) WestRock, WPC, their affiliates, officers and directors, (c) all persons who properly execute and file a timely request for exclusion from the Classes; and (d) the attorneys of record in this case.

30.     *Numerosity:* The Class is composed of the owners and inhabitants of approximately 300 residential properties located in West Point, the joinder of whom in one action is impractical.

31.     *Commonality*: Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of

the Class. These common legal and factual issues include, but are not limited to the following:

    a.    Whether the Defendants may be held liable to the Plaintiffs and members of the Class for nuisance;

    b.    Whether the Defendants may be held liable to the Plaintiffs and members of the Class for trespass;

    c.    Whether Plaintiffs and the other Class members are entitled to injunctive relief, and, if so, the nature of such relief;

    d.    Whether Plaintiffs and the other Class members are entitled to compensatory damages, and, if so, the proper measure of damages.

32.    *Typicality:* Plaintiffs' claims are typical of the claims of the other Class members. Plaintiff and each of the other Class members' properties have been exposed to fugitive wood dust. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

33.    *Adequate Representation:* Plaintiffs will fully and adequately assert and protect the interests of the other Class members. In addition, Plaintiffs have retained class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiffs nor their attorneys have any interest contrary to or conflicting with other Class members' interests.

34.    *Predominance and Superiority:* This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer

management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by the Court.

## FIRST CLAIM FOR RELIEF
### (NUISANCE)

35. Plaintiffs hereby incorporate each and every allegation as though fully set forth herein.

36. WestRock's and WPC's intermittent emission of fugitive dust, as described above, interferes with and has in the past interfered with the Plaintiffs' and Class members' reasonable and comfortable use of their homes and property and therefore is a nuisance.

37. WestRock'and WPC's intermittent emission of fugitive dust, as described above, endangers and has in the past endangered the health of the Plaintiffs and Class members' and therefore is a nuisance.

38. The nuisance is temporary because the emission of the fugitive dust is intermittent and can remediated by, among other things, reducing the size of the wood chip piles, removing the wood chip piles, enclosing the conveyer belts, using "misters," reactive agents, and training facility personal.

## SECOND CLAIM FOR RELIEF
### (TRESPASS)

39. Plaintiffs hereby incorporate each and every allegation as though fully set forth herein.

40. The fugitive dust discharged from the wood and wood chip piles enters onto and into Plaintiffs' properties and homes without right, authority or invitation.

41. The fugitive dust discharged from the wood and chip piles interferes with and has in the past interfered with Plaintiffs' and Class members' rights of possession of their properties and homes.

42. The entry of WestRock's and WPC's fugitive dust onto Plaintiffs' and Class

8

members' properties and homes, whether it is blown through the properties in the air or lands on the properties, constitutes a trespass.

## THIRD CLAIM FOR RELIEF

### (INJUNCTIVE RELIEF)

43. Plaintiffs hereby incorporate each and every allegation as though fully set forth herein.

44. The entry of the fugitive dust onto Plaintiffs' and Class members' properties and into their homes irreparably injures them.

45. Although monetary damages are the only remedy available for past nuisances and trespasses from the fugitive dust, such remedies at law are inadequate to compensate for future such nuisances and trespasses. Although the fugitive dust has been intermittent and unpredictable, the problem has recurred and is likely to recur in the future, absent remediation. There is no way to estimate when, how often or how serious those future nuisances and trespasses will be for purposes of calculating damages and therefore Plaintiffs have no adequate remedy at law for future emissions of fugitive dust by the Defendants.

46. The balance of hardships between the Plaintiffs and the Defendants warrant an equitable remedy, *i.e.* an injunction against the Defendants prohibiting them from allowing the release of the fugitive dust. The Defendants have the means to prevent, minimize and eliminate the fugitive dust and therefore an injunction against future releases of the dust would create little or no hardship for them. On the other hand, the Plaintiffs and Class members are injured by the fugitive dust through no fault of their own and suffer great hardship as a result of the Defendants' release of the dust.

47. The public interest would not be disserved by a permanent injunction. To the contrary, an injunction would protect the public from the fugitive dust.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, pray for a judgment against Defendants as follows:

a. For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representative of the Class, and appointing the law firms representing Plaintiffs as Class Counsel;

b. For compensatory damages sustained by Plaintiffs and the Class in an amount no less than $25,000 per property;

c. For equitable and/or injunctive relief for the Plaintiffs and the Class;

d. For payment of costs of suit herein incurred;

e. For both pre-judgment and post-judgment interest on any amounts awarded;

f. For punitive damages;

g. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

h. For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs on behalf of themselves and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable.

Dated: December 15, 2017         Respectfully submitted,

_____
David Hilton Wise, VA Bar No. 30828
Joseph B. Hernandez, VA Bar No. 90236
WISE & DONAHUE, PLC
10476 Armstrong Street
Fairfax, Virginia 22030
Tel:   (703) 934-6377
Fax:   (703) 934-6379
dwise@wisedonahue.com
jhernandez@wisedonahue.com
*Counsel for the Plaintiffs*

Gary E. Mason (to be admitted pro hac vice)
Danielle Perry (to be admitted pro hac vice)
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Avenue, NW
Suite 305
Washington, DC 20016
Telephone:   202-429-2290
Facsimile:    202-429-2294
gmason@wbmllp.com
dperry@wbmllp.com
*Counsel for the Plaintiffs*

Patrick W. Pendley (to be admitted pro hac vice)
PENDLEY BAUDIN & COFFIN LLP
24110 Eden Street
Plaquemine, LA  70765
Telephone:   225-937-4530
Facsimile:    225-687-6398
pwpendley@pbclawfirm.com
*Counsel for the Plaintiffs*