IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ASHTON BELL, et al,
          Petitioners,

v.                                                       Civil Action No. 3:17-cv-829

WESTROCK CP, LLC, et al,
          Defendants.

## **OPINION**

The named plaintiffs—Ashton Bell, Delilah Bell, and Lucy Edwards—live in downtown West Point, Virginia, near WestRock CP, LLC's ("WestRock") paper mill. As anyone who has driven by a paper mill might imagine, the WestRock paper mill is not a model neighbor. In their complaint, the plaintiffs allege that large amounts of wood dust from WestRock's property invade their land, homes, and cars. The dust dirties clothing, accumulates so quickly that it is useless to clean, and deters the plaintiffs from opening the windows of their homes and cars. The plaintiffs bring three counts in their complaint: (1) nuisance, (2) trespass, and (3) injunctive relief.

WestRock, the company that operates the paper mill, and West Point Chips, Inc. ("West Point Chips"), the company that chips wood for the paper mill, now move to dismiss for a failure to state a claim and because the Clean Air Act ("CAA") preempts the plaintiffs' state tort claims. The defendants say that the Court should also dismiss Count Three because injunctive relief is a remedy, not an independent cause of action.

The Court denies the motions as to Counts One and Two because the CAA does not preempt the state law claims and because the plaintiffs have alleged viable causes of action for

both trespass and nuisance. The Court grants the motions as to Count Three because injunctive relief is a remedy, not a cause of action.

## I. BACKGROUND

In downtown West Point, Virginia, WestRock operates a paper mill. On a WestRock-owned lot next to the mill, West Point Chips uses a wood chipper to turn hundreds of logs into wood chips each day. West Point Chips maintains large piles of wood logs and chips on this lot.

The plaintiffs live within 100 feet of these piles. From time to time—depending on the weather and the condition of the piles—large amounts of wood dust blow from these piles onto surrounding properties, including those of the plaintiffs. The plaintiffs allege that the dust invades their properties with such frequency and to such an extent that cleaning has become futile. Despite keeping the windows of their homes and cars closed, the dust still enters and dirties their clothing. Although the plaintiffs have complained to WestRock about the situation, the invasion of dust continues unabated.

## II. DISCUSSION[1]

The plaintiffs bring three counts. In Count One, the plaintiffs bring a nuisance claim based on the "intermittent emission of fugitive dust" that interferes with the "reasonable and

---

[1] The defendants moved to dismiss the plaintiffs' complaint pursuant to Federal Rule of Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

comfortable use of their homes and property." (Compl. ¶ 36.) Count Two alleges that the dust trespasses onto the plaintiffs' properties "without right, authority or invitation." (*Id.* ¶ 40.) Finally, Count Three requests "an injunction against the Defendants prohibiting them from allowing the release of the fugitive dust." (*Id.* ¶ 46.) Sitting in diversity, the Court applies Virginia law to resolve claims brought under the state's common law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

## *A. Preemption*

The CAA[2] does not preempt the plaintiffs' state law tort claims in Counts One and Two. Although the CAA preempts federal common law claims and interstate pollution claims, the same cannot be said for intrastate pollution. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (finding that the CAA preempts *federal* common law claims); *see TVA*, 615 F.3d at 303 (noting the "potential mischief" of allowing common law claims to proceed again an *out-of-state* polluter). In *Int'l Paper Co. v. Ouellette*, the Supreme Court held that the Clean Water Act ("CWA") does not "bar[ ]aggrieved individuals" from state tort claims brought against in-state polluters. 479 U.S. 481, 497 (1987). Courts have found "no meaningful difference between the Clean Water Act and the Clean Air Act for the purposes of . . . preemption analysis." *Bell v. Cheswick Generating Station*, 734 F.3d 188, 196–97 (3d Cir. 2013) (applying *Ouellette* and holding that "the Clean Air Act does not preempt state common law claims"); *see Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 695 (6th Cir. 2015) ("What was true for the Clean Water Act holds true for the Clean Air Act."). The Fourth Circuit noted in *TVA* that "[w]hile

---

[2] "The federal Clean Air Act is the primary mechanism under which emissions in the United States are managed. The Act makes the EPA responsible for developing acceptable levels of airborne emissions" and the EPA then passes the baton to the states, who are responsible for ensuring compliance. *North Carolina ex rel. Cooper v. Tennessee Valley Auth.* (*TVA*), 615 F.3d 291, 298–99 (4th Cir. 2010) (citation omitted).

3

*Ouellette* involved a nuisance suit against a source regulated under the Clean Water Act, all parties agree its holding is equally applicable to the Clean Air Act." 615 F.3d at 306. Because the plaintiffs pursue Virginia common law claims against the defendants for emissions alleged to have occurred within Virginia's borders, this Court finds that these claims may proceed despite the defendants' undisputed compliance with the CAA.

## B. Nuisance

The plaintiffs state a plausible claim for nuisance. Virginia law recognizes two types of nuisance: public and private. *307 Campostella, L.L.C. v. Mullane*, 143 F. Supp. 3d 407, 418 (E.D. Va. 2015). The plaintiffs' complaint fails to specify which type of nuisance they intend to pursue, but their opposition brief clarifies their intention to plead only private nuisance. This Court, therefore, construes their nuisance claim accordingly.

Under Virginia law, "a private nuisance is an activity which unreasonably interferes with the use and enjoyment of another's property." *City of Newport News v. Hertzler*, 221 S.E.2d 146, 150 (Va. 1976). "Such interference may be accomplished by substantially impairing the occupant's comfort, convenience, and enjoyment of the property, causing a material disturbance or annoyance in use of the realty." *Nat'l Energy Corp. v. O'Quinn*, 286 S.E.2d 181, 182 (Va. 1982). In the present case, the plaintiffs allege that wood dust "settles and accumulates" on their properties so frequently that it is "useless" to clean the dust. (Compl. ¶¶ 17–18.) They claim that despite keeping the windows of their homes and cars shut, the dust invades and dirties their clothing.

Virginia courts have found the invasion of dust can substantiate nuisance claims. *See Nat'l Energy Corp.*, 286 S.E.2d at 184 (affirming a lower court's finding of nuisance when "a huge amount of thick coal dust" billowed from a coal preparation plant onto surrounding properties); *Fentress Families Tr. v. Virginia Elec. & Power Co.*, 81 Va. Cir. 67, 74 (Va. Cir. Ct.

4

2010) (allowing the plaintiff's nuisance claim to proceed beyond demurrer on allegations of coal ash blowing from a construction site onto surrounding properties). Accordingly, the Court finds that the plaintiffs have asserted a plausible nuisance under Virginia law based on the significant amount of dust alleged to enter their properties.

## C. Trespass

The plaintiffs assert a valid claim for trespass. To state a claim for trespass under Virginia law, "a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land, and that was a direct result of some act committed by the defendant." *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994). Additionally, "the plaintiff must have had possession of the land . . . at the time the trespass was committed." *Id.* In the present case, neither party disputes that the named plaintiffs possess the land that they allege the defendants have invaded. The parties do dispute, however, whether the alleged wood dust is substantial enough to interfere with the plaintiffs' right of exclusive possession and whether the dust is the direct result of actions by the defendants.

First, invasions of vapor, gas, intangible particulates and, in most cases, dust generally do not infringe upon a landowner's right of exclusive possession and therefore do not amount to trespass claims under Virginia law. *See Spicer v. City of Norfolk*, 46 Va. Cir. 535, 542–43 (Va. Cir. Ct. 1996) (concluding that the subterranean invasion of toxic waste contaminating the plaintiffs' groundwater and "hazardous vapors and gases" migrating to the plaintiffs' properties were insufficient to sustain a trespass claim); *Fentress Families Tr.*, 81 Va. Cir. at 82–83 (finding that neither the invasion of airborne coal ash nor toxins leaking into groundwater interfere with exclusive possession); *Wyatt v. Sussex Surry, L.L.C.*, 74 Va. Cir. 302, 303, 306 (Va. Cir. Ct. 2007) (holding that the invasion of "noxious odors, particulates, and dust" does not interfere with the right of exclusive possession). Significant deposits of dust, however, can

5

constitute trespass. *See Albemarle Soapstone Co. v. Skipwith*, 211 F. 323, 324–25 (4th Cir. 1913) (upholding the lower court's finding of trespass under Virginia law when the defendant dumped soapstone dust into a creek that overflowed downstream, depositing dust on the plaintiff's property). Here, the complaint does not specify the size of the wood dust particulates or the amount of wood dust that accumulates on the plaintiffs' properties. Discovery will bring out facts to determine whether the wood dust is substantial enough to find for the plaintiffs on their trespass claim. If the wood dust particulates are large enough to be considered "tangible," the plaintiffs may be able to establish that the dust interferes with their right of exclusive possession. *Spicer*, 46 Va. Cir. at 543 (maintaining that "invasion of tangible matter" "constitutes an interference with possession").

Next, the trespass must result from a direct act by the defendant. *Cooper*, 448 S.E.2d at 406. In Virginia, a "direct act" does not require an intentional act by the defendant to sustain a trespass claim. *Spicer*, 46 Va. Cir. at 542; *see Albemarle Soapstone Co.*, 211 F. at 325 (affirming liability for trespass when the defendant dumped soapstone dust in a stream that then carried the dust onto the plaintiff's property); *Akers v. Mathieson Alkali Works*, 144 S.E. 492, 495 (Va. 1928) (finding the defendant liable for continuing trespass for "permit[ing] the muck to escape" from their property and "injure land of the plaintiff"); *Cooper*, 448 S.E.2d at 407 (holding that a dam failing on the defendant's property that resulted in "the discharge of a large volume of water" onto the plaintiff's property was sufficient to submit the issue of trespass to a jury). In the present case, West Point Chips creates and maintains wood piles on WestRock's property and the wind carries dust from those piles onto the plaintiffs' properties. Accordingly, this Court finds that the plaintiffs allege a plausible claim for trespass and denies the defendants' motions to dismiss this claim.

### D. *Injunctive Relief*

"Injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action." *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 862 (E.D. Va. 2016) (quoting *Dwoskin v. Bank of Am.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012)); *see Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017) ("Injunctive relief is a remedy, not a cause of action."). In their complaint, the plaintiffs improperly pled injunctive relief as a separate cause of action. As a result, this Court will dismiss Count Three. The dismissal of Count Three does not bar the Court from granting injunctive relief as a remedy if Counts One or Two succeed and an equitable remedy is warranted.

## IV. CONCLUSION

The plaintiffs have alleged viable claims for nuisance and trespass in Counts One and Two, respectively. The Court, therefore, denies the motions to dismiss Counts One and Two. For the reasons stated, however, the Court grants the motions to dismiss Count Three.

Date: July 20, 2018
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge