IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ASHTON BELL, et al.,
           Plaintiffs,

v.

           Civil Action No. 3:17-cv-829

WESTROCK CP, LLC, et al.,
           Defendants.

## OPINION

The named plaintiffs[1] live in downtown West Point, Virginia, near WestRock CP, LLC's paper mill. West Point Chips, Inc., chips wood for the paper mill. The named plaintiffs bring claims for nuisance and trespass against WestRock and West Point Chips, alleging that large amounts of wood dust from the paper mill invade their land, homes, and cars. The named plaintiffs have moved for certification of a proposed class of West Point residents who live within one-half mile of the paper mill.

The Court heard argument on the plaintiffs' motion for class certification on April 17, 2019. Because the plaintiffs meet the requirements for class certification under Federal Rule of Civil Procedure 23, the Court grants the motion and certifies the class.

## I. BACKGROUND

The proposed class members live or own property within one-half mile of the paper mill and wood chipper facility ("the facility") in West Point. West Point residents have complained about the wood dust to the West Point Town Council and to the Virginia Department of Environmental Quality ("DEQ"). In 2015, DEQ conducted an inspection "in response to complaints filed by a nearby resident with concerns regarding excessive dust caused by facility

---

[1] The named plaintiffs include Ashton Bell, Delilah Bell, Lucy R Edwards, Clarence Burrell, Sheila Burrell, Linda White, Dale Saunders, Nancy Saunders, and Olen Sikes.

operations."[2] (Dk. No. 83-15, at 11.) DEQ found West Point Chips out of compliance with a condition of its permit requiring it to "cover[] all conveyors that do not cross 14th Street" to control "[f]ugitive particulate emissions." (*Id.*) DEQ's investigation revealed that "dust . . . at nearby residences consisted of material that is indicative of material stored at WestRock." (*Id.* at 18.)

The named plaintiffs contend that the wood dust requires constant cleaning and prevents them from spending time outdoors. For example, named plaintiff Linda White says that her family no longer enjoys cookouts and other outdoor gatherings, because of "dust falling on your food or your chairs or on your person while you're [outside]." (Dk. No. 83-7, at 94:20-95:3.) Similarly, named plaintiff Nancy Saunders complains that the wood dust "prevent[s] her from regularly opening her windows and enjoying her porch and yard, and . . . require[s] her to clean more often than she would otherwise." (Dk. No. 83-11, at 4.)

To show that the wood dust originates from the facility, the plaintiffs submitted an expert report from meteorologist David A. Sullivan. To "evaluate airborne exposures and deposition of wood dust" from the facility, Sullivan developed a "dispersion model" using "upper-air meteorological data." (Dk. No. 83-18, at 8, 30.) Sullivan's model showed "substantial quantities of wood dust being present in the air and deposited onto surfaces within West Point." (*Id.* at 10.)

The plaintiffs sued WestRock and West Point Chips for nuisance, trespass, and injunctive relief. The Court dismissed the plaintiffs' claim for injunctive relief. On April 17, 2019, the Court held a hearing on the plaintiffs' motion for class certification. At the hearing, the Court

---

[2] DEQ conducted two partial investigations in 2011 "in response to dust complaints." (Dk. No. 83-15, at 12.) DEQ found the facility "in compliance but provided recommendations to control fugitive emissions." (*Id.*)

2

indicated its intent to certify a class. Following the hearing, the Court granted the motion for class certification and certified the following class:

> All persons, who on December 15, 2017, owned or occupied property in West Point located one-half (0.5) mile or less from 200 14th Street in West Point, Virginia, or rented and occupied property in West Point located one-half (0.5) mile or less from 200 14th Street in West Point, Virginia.

(Dk. No. 110, at 1.) Additionally, the Court certified the class "as to the following issues: (1) whether the defendants are liable to the plaintiffs for nuisance; and (2) whether the defendants are liable to the plaintiffs for trespass." (*Id.*)

## II. DISCUSSION[3]

Rule 23 of the Federal Rules of Civil Procedure govern class actions, including class certification. The party seeking certification must first satisfy the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a). In addition to the requirements of Rule 23(a), the proposed class must fall within at least one of the three types of class actions listed in Rule 23(b). Rule 23(b)(3), the relevant type of class action in this case, requires (5) predominance and (6) superiority. Fed. R. Civ. P. 23(b)(3). Finally, Rule

---

[3] The party seeking class certification bears the burden of proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). When evaluating a motion for class certification, "'the trial court [must be] satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff[s'] underlying claim." *Dukes*, 564 U.S. at 350-51 (internal citations omitted) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Nevertheless, "[t]he likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Finally, district courts should "give Rule 23 a liberal rather than restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1988)).

3

23(c) requires (7) ascertainability, meaning that "the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see* Fed. R. Civ. P. 23(c)(1)(B). The Court addresses each requirement in turn.

## A. Numerosity

The proposed class must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action under [Rule 23]; application of the rule is to be considered in light of the particular circumstances of the case and generally, unless abuse is shown, the trial court's decision on this issue is final." *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Here, the proposed class encompasses at least 260 residents, which satisfies the numerosity requirement under Rule 23(a)(1). *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (finding that a class size of 74 satisfied the numerosity requirement); *Cypress*, 375 F.2d at 653 (finding that a class size of 18 satisfied the numerosity requirement).

## B. Commonality

The defendants' challenge to the commonality requirement fails because there "are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single [common] question" satisfies this requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The plaintiffs must show that "the class members have suffered the same injury," and that the "common contention . . . is capable of classwide resolution . . . and will resolve an issue that is central to the validity of each . . . claim[] in one stroke." *Id.* at 350. Furthermore, the existence of "'[m]inor factual variances' do[es] not prevent a plaintiff from showing

commonality as long as the claims arise from the same set of facts and the putative class members rely on the same legal theory." *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 546 (E.D. Va. 2018) (quoting *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016)).

Relying on *Modern Holdings, LLC v. Corning, Inc.*, No. 5:13-cv-405, 2018 WL 1546355 (E.D. Ky. Mar. 28, 2018), the defendants argue that the nuisance and trespass claims require "each individual class member [to] produce evidence particular to each property." (Dk. No. 99, at 9.) In *Modern Holdings*, the plaintiffs alleged nuisance, trespass, and other claims resulting from the defendants' dumping of "at least twenty-five different [toxic] substances" in "nearby fields, streams, and lands," affecting 3,000 parcels of property. *Id.* at *1-2, 6-7. The court declined to certify the class, finding that the named plaintiffs had "such an enormous variety of issues between them, each of which presents a unique question of both actual and proximate causation." *Id.* at *7.

The court in *Modern Holdings* distinguished its holding from a Seventh Circuit case similar to this case. *See Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003). The court first noted that the "proposed class in *Mejdrech*," which included roughly 1,000 residents of houses within a one-mile radius of the factory, "was significantly smaller." *Modern Holdings*, 2018 WL 1546355, at *7. Second, the court explained that "the proposed class in *Mejdrech* sought only property damages resulting from the contamination of one substance," whereas the proposed class in *Modern Holdings* sought to "recover damages for personal injury and property damages resulting from not one, but at least twenty-five different substances." *Id.* Finally, although the court in *Mejdrech* "restricted its own result to cases with 'issues identical across all the claimants,'" *Modern Holdings* involved issues that were "not identical across all the claimants." *Id.*

5

Like *Mejdrech*, this case involves a smaller class size, property (not personal) damages only relating to one substance (the wood dust), and issues identical to all the plaintiffs. Here, the plaintiffs assert the same legal theories and rely on the same facts regarding their own testimony, environmental reports, actions taken by the defendants, and the testimony of an expert witness. *See Branch*, 323 F.R.D. at 546. Although "[m]inor factual variances" may exist between the individual plaintiffs, *id.*, the plaintiffs share common questions of law and fact, which have the "capacity" to produce common answers. *Dukes*, 564 U.S. at 350. Accordingly, the plaintiffs have provided sufficient evidence to demonstrate commonality.

## C. Typicality

In this case, "the claims or defenses of the [plaintiffs] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). To analyze typicality, courts should "begin with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it[,] then determine the extent to which those facts would also prove the claims of the absent class members." *Id.* at 467.

To succeed on their nuisance claim, the plaintiffs must show that defendants have engaged in (1) an activity that unreasonably interferes, (2) with the use and enjoyment of another's property, (3) causing a material disturbance or annoyance in the use of the realty. *Collett v. Cordovana*, 290 Va. 139, 145, 772 S.E.2d 584, 587 (2015); *Bowers v. Westvaco*, 244

Va. 139, 419 S.E.2d 661 (1992); *City of Va. Beach v. Murphy*, 239 Va. 353, 355, 389 S.E.2d 462, 463 (1990). To prove trespass, the plaintiffs must show that (1) they had possession of the affected land at the time of the trespass, (2) there was a physical invasion that interfered with the right of exclusive possession, and (3) the invasion was the direct result of some act committed by the defendant. *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994).

The plaintiffs intend to introduce facts showing that wood dust escapes from the paper mill and wood chipper facility, which invades or interferes with their enjoyment of their homes and properties. Those same facts would also prove—or disprove—the nuisance and trespass claims of the absent class members. Thus, the claims of the plaintiffs are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).

## D. Adequacy

Turning to adequacy, the plaintiffs must prove that both the representative parties and class counsel will fairly and adequately protect the interests of the class. *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 212 (E.D. Va. 2015) (citing Fed. R. Civ. P. 23(a)(4), (g)(4)). The representative parties here "possess the same interest and suffer the same injury" as the proposed class members, and "possess undivided loyalties" to them. *Broussard*, 155 F.3d at 338 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Further, class counsel qualifies as experienced in class actions and other complex civil litigation. Thus, the plaintiffs meet Rule 23's adequacy requirement.

## E. Predominance

Next, the defendants' challenge to the predominance requirement fails because "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). While similar to the commonality inquiry,

"the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). It tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The test "is qualitative rather than quantitative," *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010), meaning that it "is not simply a matter of counting common versus noncommon questions and checking the final tally . . . [, but] compares the quality of the common questions to those of the noncommon questions," *Soutter*, 307 F.R.D. at 214 (internal citation omitted). "Common issues of law and fact predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Stillmock*, 385 F. App'x at 273 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S 639 (2008)).

In this case, the question of whether the wood dust creates liability for nuisance and trespass predominates over questions affecting individual class members. As the plaintiffs point out, an objective standard applies to nuisance and trespass claims. *See Amgen Inc.*, 568 U.S. at 459 ("Because materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations is a question common to all members of the class Connecticut Retirement would represent."). In other words, the class claims for nuisance and trespass "will prevail or fail in unison." *Id.* at 460.

The defendants argue that the plaintiffs "offer no viable model to determine any sort of damage determination on a class-wide basis." (Dk. No. 99, at 24.) In *Mejdrich*, the court "limited class treatment to what [it] described as 'the core questions, i.e., whether or not and to what extent [Met-Coil] caused contamination of the area in question' . . . [m]indful that not only
8

the amount but the fact of damage might vary from class member to class member." 319 F.3d at 911.

Mindful of similar concerns in this case, the Court certified the class "as to the following issues: (1) whether the defendants are liable to the plaintiffs for nuisance; and (2) whether the defendants are liable to the plaintiffs for trespass." (Dk. No. 110, at 1.) Thus, "if liability is found, the issue of damages can be decided by a special master or by another method." *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 (6th Cir. 2004) (citing Fed. R. Civ. P. 23(c)(4)(A)); *see also Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 30 (E.D.N.Y. 2001) ("By bifurcating issues like general liability or general causation and damages, a court can await the outcome of a prior liability trial before deciding how to provide relief to the individual class members."). Because "the quality of the common questions" outweighs "the noncommon questions," *Soutter*, 307 F.R.D. at 214, the plaintiffs meet the predominance requirement.

## F. Superiority

The plaintiffs have shown "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In determining whether the class mechanism is truly superior, the court should consider '(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability.'" *Soutter*, 307 F.R.D. at 217-18 (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); Fed. R. Civ. P. 23(b)(3)). Phrased more generally, the superiority requirement compares class action litigation to possible alternatives "to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate

a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock*, 385 F. App'x at 274 (internal quotation and citation omitted).

A class action is superior in this case. No other litigation is currently pending, and the parties have engaged in extensive discovery for over a year. All class members live or own property in West Point, Virginia, so Richmond is a convenient forum. The Court does not foresee difficulty in managing this case as a class action. A class action serves the interests of economy and efficiency, so the plaintiffs meet the superiority requirement.

### G. *Ascertainability*

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable'" by use of "objective criteria"—an "ascertainability" requirement. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). In other words, if "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,'" class certification is not appropriate. *Id.*

The plaintiffs argue they meet the criteria for ascertainability for two related reasons. First, the class definition–all persons who own or reside on property in West Point located one-half mile or less from 200 14th Street in West Point, Virginia–"objectively identifies members of the Class." (Dk. No. 83, at 15.) Second, public property records can identify all members of the class. In response, the defendants say that reliance on public property records would require extensive and individualized fact-finding missions.

The defendants rely on two cases to support their claim that courts deny class certification when land records form the basis for ascertainability. In *Johnson v. Time Warner Entertainment-Advance/Newhouse Partnership*, the plaintiff sued a cable company for installing unauthorized cable transmission lines and related equipment on his land. No. 3:15-cv-01727-

CMC, 2017 WL 3765551, at *1 (D.S.C. Aug. 31, 2017). The court held that the proposed class was not ascertainable because it would require a complicated multi-step process, including "(1) identification of parcels over which TWC has located aerial Cable Facilities attached to third-party utility poles, (2) exclusion of parcels where the Cable Facilities are located within Excluded Areas of Permissive Use[,] . . . and (3) identification of the owners of those parcels during the time periods covered by this litigation." *Id.* at *7. In effect, the plaintiff's proposed class would have required scouring property records and physically inspecting the properties to ascertain members of the class. *Id.*

Similarly, in *Johnson v. Kansas City Southern*, the court declined to certify a class of plaintiffs who sued a telecommunications company for improperly installing fiber optic cables on the plaintiffs' properties. 224 F.R.D. 382, 383 (S.D. Miss. 2004). The court found that ascertaining members of the class would require a tedious multi-step process, similar to that in *Time Warner*. Specifically, the process would have "require[d] individualized review of thousands of title documents containing differing and diverse conveyance language," to determine "the intention of the parties to the conveyances and the legal effect of the instruments." *Id.*

The plaintiffs' class definition does not present the same ascertainability issues as in *Time Warner* and *Kansas City Southern*. To identify class members, the proposed classes in *Time Warner* and *Kansas City Southern* called for multi-step processes, beyond simply consulting property records. In this case, the half-mile radius from 200 14th Street, with no other physical prerequisites, provides a clear boundary separating class members from non-members.

Moreover, "[t]he fact that applying the criteria could take significant time and effort may be a relevant consideration for weighing the manageability of the class device . . . but it does not

11

factor into the Court's ascertainability determination." *Soutter*, 307 F.R.D. at 199. Accordingly, the plaintiffs have demonstrated that the proposed class definition would not present an ascertainability problem.

### III. CONCLUSION

Because the plaintiffs meet the requirements for class certification, the Court grants the motion.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 26 April 2019
Richmond, VA

/s/ /K/
John A. Gibney, Jr.
United States District Judge