IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ASHTON BELL, et al.,
        Plaintiffs,
v().

                                              Civil Action No. 3:17-cv-829

WESTROCK CP, LLC, et al.,
        Defendants.

## OPINION

In this class action, the plaintiffs seek redress for wood dust that escapes from the defendants' paper mill and wood chip mill in West Point, Virginia, resulting in a dusty invasion of the plaintiffs' land, homes, and cars. The plaintiffs allege that the wood dust amounts to nuisance and trespass under Virginia law, entitling them to compensatory damages. They also seek an injunction prohibiting future wood dust from escaping the paper mill and chip mill.

The defendants have moved for summary judgment, arguing that the statute of limitations bars the plaintiffs' claims. The defendants contend that the escaping wood dust gives rise to a claim for permanent nuisance and trespass, so the five-year limitations period began to run when the plaintiffs first noticed the effects of the wood dust over ten years ago. The Court agrees that the statute of limitations bars the plaintiffs' damages claims, and thus will grant in part the motion for summary judgment. The Court, however, will deny in part the motion because the limitations period is not a barrier to the plaintiffs' request for injunctive relief.

## I. BACKGROUND

WestRock CP, LLC ("WestRock"), has been operating a paper mill in West Point for one hundred years. This litigation concerns the wood chip storage yards at the paper mill. WestRock's supply of wood chips begins with tree deliveries to a chip mill run by West Point Chips, Inc. ("West Point Chips"), which is located next to the paper mill. West Point Chips

debarks and chips the trees, and then sends the stripped bark and solid wood chips to WestRock's paper mill by a conveyance system. WestRock temporarily stores the solid wood chips in a wood yard. WestRock has stored wood chips in the wood yard for forty years. The paper mill and chip mill shut down annually for maintenance, typically for nine to fourteen days.

The plaintiffs, Ashton Bell, Delilah Bell, Lucy Edwards, Clarence Burrell, Sheila Burrell, and Linda White,[1] have sued WestRock and West Point Chips. They allege that the wood dust that escapes from WestRock's wood yard and West Point Chips' wood piles rains down on their homes and properties in West Point, preventing them from enjoying the outdoors and requiring constant cleaning.

According to the plaintiffs, the wood dust is "pervasive, . . . inescapable[,] . . . regular, [and] intense," and "affects [their] property every day." (Dk. Nos. 120-11, at 5; 120-12, at 5; 120-13, at 5; 120-14, at 5; 120-15, at 5; 120-18, at 5.) Notwithstanding the perpetual issues with the wood dust, the plaintiffs say that the problem has worsened since 2012 or 2013.

Other than Edwards, the plaintiffs all say that they first noticed the wood dust problem in the early 2000s. Edwards first noticed the wood dust in 2007. Two plaintiffs—Edwards and Ashton Bell—sent a letter in February, 2006, addressed to "The Owners of the West Point Chip Mill." (Dk. No. 99-22, at 2.) Edwards and Bell complained of wood dust "enter[ing] [their] house[s] when the windows and doors are closed." (*Id.*)

In their amended complaint, the plaintiffs contend that the escaping wood dust amounts to nuisance and trespass under Virginia law, entitling them to compensatory damages "in an amount no less than $25,000 per property." (Dk. No. 65, at 11.) The plaintiffs characterize the wood dust as a temporary nuisance and trespass: "[T]he emission of the fugitive dust is

---

[1] The plaintiffs have voluntarily dismissed Olen Sikes, Dale Saunders, and Nancy Saunders.

2

intermittent and can [be] remediated by, among other things, reducing the size of the wood chip piles, removing the wood chip piles, enclosing the conveyer belts, using 'misters,' reactive agents, and training facility personnel." (*Id.* at ¶ 38.) In addition to compensatory damages, the plaintiffs "seek an injunction prohibiting any future migration of dust from the wood piles or the wood chip piles onto their properties." (*Id.* at ¶ 5.) On April 26, 2019, the Court certified this case as a class action with respect to the defendants' liability for nuisance and trespass.

The defendants have now moved for summary judgment, arguing that Virginia's five-year statute of limitations bars the plaintiffs' damages claims. The defendants argue that the plaintiffs assert claims for *permanent* nuisance and trespass, so the limitations period began to run when the plaintiffs first noticed problems with the wood dust in the 2000s. The plaintiffs insist that their claims are for *temporary* nuisance and trespass, so the statute of limitations begins running anew with each alleged harm.

## II. <u>DISCUSSION</u>[2]

### *A. Claims for Damages*

Under Virginia law, a five-year limitations period applies to nuisance and trespass claims. *See* Va. Code Ann. § 8.01-243(B). Courts apply "substantially the same" analysis "for statute-of-limitations purposes" when evaluating nuisance and trespass claims. *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113, 125 n.9 (2017).

---

[2] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Supreme Court of Virginia has "adopted the prevailing view that a cause of action involving an injury of a 'permanent character, resulting from a permanent structure' accrue[s] when the injury was *first* sustained . . . even though 'the injury constantly and regularly recurs' over time." *Id.* at 126 (internal citations omitted). In other words, "when the recurring injuries, 'in the normal course of things, will continue indefinitely, . . . the entire damage suffered, both past and future, must be recovered in that action,' and as a result, 'the right to recover will be barred unless it is brought within the prescribed number of years from the time the cause of action accrued.'" *Id.* (quoting *Norfolk Cty. Water Co. v. Etheridge*, 120 Va. 379, 280-81 (1917)).

### 1. *Permanent Nuisance and Trespass*

For example, in *Forest Lakes*, the plaintiffs complained about sediment flowing into a jointly owned lake in their subdivision. 293 Va. at 113. The plaintiffs first noticed the sediment in 2003 when commercial developers began building a neighboring property. When the plaintiffs sued in 2011, they argued that the sediment discharges were temporary in nature. The Supreme Court of Virginia rejected that argument, noting that the sediment basins "were permanently in place by fall 2004," and that "sediment discharge, at least to some degree, continuously flowed from the basins into [the lake] because of the functional design of the basins." *Id.* at 129. Because "[a]bsent 'any cause but human labor,' . . . sediment discharge from the . . . basins will likely continue indefinitely," the discharge was permanent in nature and thus time-barred. *Id.* at 130. The court further explained that the limitations period "will *not* be extended simply because the damage is much larger in later years than it was when the structures were first erected." *Id.* Indeed, "[a] showing of 'increased damage,' by itself, does not defeat the application of the statute of limitations in this context." *Id. see also Shin v. Joyaux*, No.

4

160559, 2017 WL 1324139 (Va. Apr. 7, 2017) (relying on *Forest Lakes* and rejecting the plaintiff's argument that increased water damage created a temporary nuisance).

The Supreme Court of Virginia has a long history of enforcing the statute of limitations for property-based torts. In *Worley v. Mathieson Alkali Works*, the plaintiff brought a nuisance claim against a nearby plant. 119 Va. 862, 864 (1916). The plant produced distiller waste referred to as "muck," which it had produced since it opened in 1895. The court concluded that the plaintiff asserted a permanent nuisance, reasoning that the alleged harm will be "constant, continuous, and injurious to the plaintiff . . . [a]s long as [the plant] is operated." *Id.*

## 2. *Temporary Nuisance and Trespass*

The five-year limitations period, however, does not apply when "a series of 'repeated actions' causing *temporary* injuries to property would run the limitation period anew with each such action." *Id.* at 127. An injury can be temporary even when "the physical structure causing the damage is itself a permanent fixture on the offender's property." *Id.* at 128. The relevant inquiry is whether the structure "under 'normal conditions'" causes the alleged harm. *Id.*

In *Hampton Roads Sanitation District v. McDonnell*, discharges from a sewage plant were temporary in nature because the plant did not discharge wastewater onto private property under "normal conditions." 234 Va. 235, 237, 239 (1987). Instead, the plant discharged wastewater only when the volume in the plant reached "three times the normal quantity." *Id.* at 237. Because the discharges "occurred only at intervals," *id.* at 239, the limitations period did not begin to run when the plant first started discharging wastewater in the 1960s.

Similarly, in *Cate v. Transcontinental Gas Pipe Line Corp.*, the plaintiffs complained about the defendants' pipeline compressor station next to the plaintiffs' property. 904 F. Supp. 526 (W.D. Va. 1995). The plaintiffs alleged that the station, "on a[n] intermittent and

unscheduled basis, emit[ted] extremely loud noises up to 80 decibels." *Id.* at 539. Applying Virginia law, the court concluded that the noises constituted a temporary nuisance because "[r]ather than 'flooding' plaintiffs once and for all time with loud noises, the facility peppers plaintiffs with the nuisance." *Id.*

### 3. *Application to the Wood Dust*

The above precedent mandates the conclusion that the statute of limitations bars the plaintiffs' claims. The plaintiffs concede that they first noticed the effect of the wood dust in the 2000s. They have offered no convincing evidence that the wood dust "occur[s] only at intervals," *McDonnell*, 234 Va. at 239, or "on a[n] intermittent and unscheduled basis," *Cate*, 904 F. Supp. at 539. Instead, the evidence shows that "[a]bsent 'any cause but human labor,'" the wood dust "will likely continue [to escape] indefinitely." *Forest Lakes*, 293 Va. at 130. The plaintiffs describe the wood dust as "pervasive" and "regular," and say that it "affects [their] property every day." (Dk. No. 120-11, at 5.) The plaintiffs cannot circumvent the statute of limitations simply by framing their injuries as temporary in their complaint.

At the hearing on the motion for summary judgment, counsel for the plaintiffs cited several pieces of evidence to support the argument that the nuisance and trespass are temporary in nature. None of the plaintiffs' evidence defeats the application of the statute of limitations.

First, the plaintiffs argue that the wood dust is temporary in nature because the "[w]ood dust problem has gotten worse in the last 3 to 5 years," and it "is worse some days than others." (Dk. No. 138-40, at ¶¶ 15-16.) The Supreme Court of Virginia has rejected that argument in two recent cases. *See Shin*, 2017 WL 1324139, at *2 ("As we stated in *Forest Lakes*, '[a] showing of 'increased damage,' by itself, does not defeat the application of the statute of limitations.'"). Thus, "increased damage" does not transform the wood dust into a temporary harm. *See S. Ry.*

6

*Co. v. McMenamin*, 113 Va. 121 (1912) ("[I]t [is] not essential to the defense of the statute of limitations that the damage complained of should exist to the same extent during the period of five years.").

Second, the plaintiffs say that the defendants "ha[ve] taken action to mitigate wood dust emissions." (Dk. No. 138-40, at ¶¶ 12-13.) But "the ability to abate the nuisance does not determine whether a nuisance is permanent or temporary for statute of limitations purposes." *Spicer v. City of Norfolk*, 46 Va. Cir. 535, 546 (Cir. Ct. 1996). Instead, the relevant inquiry is whether the injury "will continue indefinitely . . . in the normal course of things." *Forest Lakes*, 293 Va. at 124. Here, the evidence shows that the mills produce wood dust "under normal conditions." *Id.* In other words, "[a]s long as [the mills] [are] operated," the wood dust will be "constant, continuous, and injurious to the plaintiff[s]." *Worley*, 119 Va. at 866.

Third, the plaintiffs assert that the "[o]perations at WestRock [and West Point Chips] are not constant." (Dk. No. 138-40, at ¶¶ 15-16.) The plaintiffs point out that the mills close annually for maintenance. The fact that the wood dust "ceases temporarily" during an annual shut-down, *Etheridge*, 120 Va. at 381, does not transform the injury into a "temporary and episodic" one. *Forest Lakes*, 293 Va. at 129.

Relying on the Supreme Court of Virginia's recent decision in *Robinson v. Nordquist*, 830 S.E.2d 36 (Va. 2019), the plaintiffs contend that they are entitled to a jury trial on the temporary or permanent character of the wood dust. In *Robinson*, the trial court granted the defendant's plea in bar,[3] holding that the statute of limitations barred the plaintiff's trespass and nuisance claims. In her amended complaint, the plaintiff "described the water encroachments as

---

[3] A plea in bar is a procedural tool available in Virginia state court practice. "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 188, 195 (2006).

7

'on-going,' and 'continuous,' but also stated that they were 'repeated and intermittent.'" *Id.* at 43. The Supreme Court of Virginia reversed the trial court's decision to grant the plea in bar, holding that "the allegations in the amended complaint [did] not establish" whether the statute of limitations applied, so the plaintiff was "entitled to a jury trial on this issue." *Id.*

According to the plaintiffs, *Robinson*'s "clear holding" entitles them to a jury trial on the issue of whether the statute of limitations applies to their claims. (Dk. No. 186, at 4.) The plaintiffs, however, cannot survive summary judgment based solely on the allegations in their complaint. The plaintiffs acknowledge that they first noticed the effects of the wood dust over a decade ago, and they have failed to demonstrate that the wood dust amounts to a temporary harm. The plaintiffs waited too long to recover damages for nuisance and trespass. Accordingly, the Court will grant in part the defendants' motion for summary judgment.

### B. Injunctive Relief

Although the statute of limitations bars the plaintiffs' claims for damages, it does not apply to their request for injunctive relief. Virginia's five-year limitations period does not apply to equitable relief. *See* Va. Code Ann. § 8.01-230. Instead, the doctrine of laches governs claims for equitable relief. "Laches is the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 58 (1992). In considering the doctrine of laches, courts "do[ ] not apply an absolute rule, as is the case with a statute of limitations, but must determine each case in light of its particular circumstances." *Id.* The party invoking laches as a defense has the burden to prove it. *Id.*

In *Forest Lakes*, the Supreme Court of Virginia noted that the plaintiffs "limited their argument on appeal to their claim for trespass damages," and "ma[de] no mention of the

injunctive relief they sought in their amended complaint or the equitable doctrine of laches." 293 Va. at 123, 132 n.17 (citing *E.W. Face & Son v. Cherry*, 117 Va. 41, 45 (1915)). In *Cherry*, the court declined to apply laches to the plaintiffs' nuisance claim, holding that "the evidence makes out a case of continuing [or permanent] nuisance, to which the doctrine of laches does not apply." 117 Va. at 45.

The defendants argue that "[t]he Virginia Supreme Court never stated that laches was unavailable in cases where a permanent nuisance claim is pursued." (Dk. No. 185, at 12.) That argument ignores the rule set forth over one hundred years ago in *Cherry* and cited in *Forest Lakes*—that "the doctrine of laches does not apply" to claims for permanent nuisance. 117 Va. at 45. Absent authority to the contrary, the Court will not contravene the Supreme Court of Virginia's clear holding in *Cherry*. The plaintiffs made an explicit request for injunctive relief in their complaint. Neither the statute of limitations nor the doctrine of laches prevents them from seeking that relief.

### III. CONCLUSION

Because the five-year limitations period bars the plaintiffs' nuisance and trespass claims for damages, the Court will grant in part the defendants' motions for summary judgment. The Court, however, will deny in part the motions because the plaintiffs may seek injunctive relief.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 18 September 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge